No. 65057.—J. M. Altieri v. United States, protest 59/9129 (San Juan).

RICHARDSON, Judge: This action involves the question of the legality of the action of the collector of customs at the port of San Juan, Puerto Rico, in assessing liquidated damages against plaintiff for the alleged violation of the entry requirements of section 8.59(g) of the Customs Regulations of 1954, as amended.

Section 8.59 was promulgated by the Secretary of the Treasury pursuant to 19 U.S.C.A., section 1448(b) (section 448(b), Tariff Act of 1930), which authorizes that official "to provide by regulations for the issuing of special permits for delivery, prior to formal entry therefor, of perishable articles * * * the immediate delivery of which is necessary." The regulation sets forth certain procedural requirements with respect to applications for such special permits and further provides, in pertinent part, as follows:

(g) Except as herein otherwise prescribed, entry shall be made, including deposit of estimated duties and taxes, within 2 days after the day on which the

articles are released under a special permit. When the importer or his agent furnishes in writing a satisfactory explanation of his inability to make entry and deposit within 2 days after the day of release, the collector may extend the period for not to exceed 2 additional days. * * *

\* \* \* \* \* \* \*

(i) If entry, when required, is not timely made, the collector shall make an immediate demand for liquidated damages in the entire amount of the bond in the case of a single-entry bond. When the transaction has been charged against a term bond, the demand shall be for the amount that would have been demanded if the merchandise had been released under a single immediate delivery and consumption entry bond. * * *

The involved merchandise consists of four cases of perishable preserved meats exported from France and invoiced as "liver with truffles," "whole goose liver with truffles," and "tripes a la mode de caen." From the record, it appears that the merchandise arrived in the port of San Juan on September 21, 1958. Because of its perishable nature, plaintiff desired to place the merchandise in cold storage for preservation. After consultation with customs officials, plaintiff secured from the United States Department of Agriculture the following authorization, dated September 24, 1958, addressed to the collector of customs at San Juan and signed by the veterinarian-in-charge:

The foregoing merchandise is released temporarily by the U.S.D.A. Meat Inspection Branch subject to filing satisfactory bond and agreement with the U.S. Customs Collector, San Juan, P.R., to place merchandise in cold storage for preservation at Frigorífico Ramírez.

All of the merchandise is to be returned to U.S. Customs when required by the Collector of Customs.

This authorization was necessary because all meat and meat-food products offered for entry into the United States are subject to inspection, and the release of such articles from customs custody is affected thereby. Sections 12.8 and 12.9 of the Customs Regulations of 1954, as amended, relate to such release, and, insofar as here pertinent, read as follows:

12.8 Inspection; bond; release.—(a) * * * Such meat and meat-food products shall not be released from customs custody prior to inspection by an inspector of the Meat Inspection Branch, Agricultural Research Service, except when authority is given by such inspector for inspection at the importer's premises or other place not under customs supervision. In such case a bond for the return to customs custody of the merchandise shall be given by the consignee or agent on customs Form 7551, 7553, or other appropriate form, * * *.

12.9 Release for final delivery to consignee.—No meat, meat-food products, or animal casings shall be released for final delivery to the consignee until the collector of customs is advised by the Department of Agriculture, or its representative, that the merchandise is admissible.

On the same date, September 24, 1958, plaintiff filed in the office of the collector of customs an application on Customs Form 3461, entitled "Application For Special Permit For Delivery Of Perishable And Other Articles, Immediate Delivery Of Which Is Necessary." Plaintiff had typed or caused to be typed on said application "Transfer to Frigorifico Ramirez authorized by Bureau of Animal Industry, for the purpose of cold storage and subsequent entry." It is stated on the application that the "Goods required immediate delivery due to their perishable nature." The application was approved and charged to plaintiff's term bond and special permit No. 26 was issued. The instant merchandise was examined on September 25, 1958, and the customs examiner who made the examination placed the following notation on the permit: "Examined & released 9/25/58—9:30 A.M." and initialed it. The permit was then given to a customs inspector who placed his signature thereon.

The merchandise was surrendered under the permit to an employee of the plaintiff, who deposited it in the "Frigorifico Ramirez" at 10:45 a.m. of the same day.

Plaintiff made entry and deposited the duties estimated to be due on the involved merchandise on October 3, 1958. Subsequently, on October 20, 1958, plaintiff filed an application with the United States Department of Agriculture for the inspection of the preserved meats. This inspection was made on October 27, 1958. On that date, at the request of plaintiff, the acting assistant collector, who was one of the three witnesses for defendant, called the storage plant where the meats were stored, and, according to his testimony, "told the proprietor that the merchandise had been released from customs custody on September 25, 1958 and that as far as the U.S. Department of Agriculture was concerned, if they had made an inspection, there was no objection at all for the release if the inspector from the Department of Agriculture had done his work."

Meanwhile, on September 30, 1958, the collector of customs, under the authority of section 8.59(i), *supra*, assessed liquidated damages in the amount of $329 for the alleged failure of plaintiff to make timely entry of the imported meats in compliance with the provisions of section 8.59(g), *supra*, which requires merchandise released under a special permit to be entered within 2 days after such release. The damages so assessed were mitigated to $22 after consideration of a petition filed by plaintiff seeking cancellation of the full amount.

Plaintiff protests as illegal the imposition of the liquidated damages by the collector of customs for alleged noncompliance, contending that the entry requirements of section 8.59(g), *supra*, were not violated "because entry was made and the estimated duties were deposited on October 3, 1958 while the merchandise was still under constructive customs custody prior to and pending release for final delivery after admission by the U.S. Department of Agriculture." It is contended that "there was no release of the merchandise prior to October 27, 1958 when the requirements of sections [*sic*] 12.9 of the customs regulations were complied with."

From the foregoing, plaintiff does not appear to contend that the merchandise was not released for delivery under a special permit of the character contemplated by section 1448(b), *supra*, or to deny the applicability of the entry requirements of the regulation in question. Nor has plaintiff attacked the validity or reasonableness of the regulation. Plaintiff's position seems to be that delivery of the subject meats under the special permit occurred on October 27, 1958, the date on which they were released from the cold storage plant after having been inspected and found admissible by an inspector of the Meat Inspection Branch of the Agricultural Research Service. This position is based upon the theory that a release prior to that date could not have been effectuated, in view of the prohibition in section 12.9, *supra*, against final delivery of meat, meat-food products, or animal casings before the collector has been advised by the United States Department of Agriculture that the merchandise is admissible.

From the record, defendant's position appears to be that the merchandise under consideration was released for delivery within the meaning of section 8.59(g), *supra*, when, upon plaintiff's application, it was surrendered under special permit No. 26 to plaintiff's employee on September 25, 1958, prior to formal entry and after the completion of examination for appraisement purposes, and was removed by said employee to the cold storage warehouse.

If plaintiff's theory with regard to the delivery of the instant merchandise is sound, the entry, including the deposit of estimated duties, on October 3, 1958, was timely, and the collector's assessment of liquidated damages was

invalid. On the other hand, if the preserved meats were delivered under the special permit on September 25, 1958, as defendant contends, there was no compliance with the entry requirements of section 8.59(g), *supra*, and the liquidated damages for noncompliance were properly assessed.

We are of the opinion that the delivery of the merchandise within the meaning of the regulation in question, occurred on September 25, 1958, and not on October 27. It is to be noted that section 1448(b), *supra*, speaks of "immediate delivery" of perishable and other articles. The phrase "immediate delivery" connotes the passing or surrender to the consignee of imported articles forthwith or without the intervention of a significant period of time. The obvious purpose of the statute permitting delivery prior to formal entry, which is an exception to the general requirement that merchandise be retained at the place of unlading until entry therefor is made (see 19 U.S.C.A., section 1484(a) (section 484(a), Tariff Act of 1930, as amended)), is to protect the importer of perishable or other articles where a delay in the delivery of such articles would cause unusual loss or inconvenience. The release of the imported meats from the "Frigorifico Ramirez" on October 27, 1958, more than a month after their arrival in the port of San Juan, in our opinion, could not be considered an "immediate delivery," nor did it come within the statutory purpose. On the other hand, the surrender of the involved perishable merchandise to the plaintiff's employee after the completion of examination for appraisement purposes on September 25, 1958, for transfer to a cold storage plant for preservation certainly satisfied the purpose of the statute, and comported with the term "immediate delivery," since it was made without the intervention of a significant period of time.

The "Frigorifico Ramirez" was selected by the plaintiff, the evidence establishes that it was not a bonded warehouse, it was not under customs supervision, and, for the purposes of this case, we do not think it can be said that the meats in issue were in constructive customs custody during the period they were stored there awaiting inspection as plaintiff contends. The merchandise was placed in cold storage for the benefit of the plaintiff, not for any customs purpose. It appears that, prior to removal on September 25, the customs officials had performed all of the official acts required by the regulations to be performed with regard to merchandise released under a permit for immediate delivery prior to formal entry.

The implication of plaintiff's argument with regard to the effect of section 12.9, *supra*, is that final delivery, which implies unconditional delivery of the merchandise passing unrestricted control of the goods to the consignee, must occur in order to start the running of the time limitation specified in section 8.59(g), *supra*, for making entry of merchandise released under a special permit. We do not think section 1448(b) either expressly or by implication makes such a requirement. To so interpret the statute would, in a situation like the one presently before the court, make the time of entry dependent upon inspection by an inspector of the Meat Inspection Branch of the Agricultural Research Service, and thus permit the entry of merchandise to be indefinitely delayed. This is contrary to the general legislative policy, as exemplified in 19 U.S.C.A., section 1484(a) (section 484(a), Tariff Act of 1930), as amended, of requiring merchandise to be entered within a definite time after entry of the importing vessel, and such result could not have been intended.

We are convinced that the instant merchandise was released under a special permit within the meaning of section 8.59(g), *supra*, on September 25, 1958, and we so hold. Therefore, since the entry of the imported meats, including the deposit of estimated duties, was not made until October 3, 1958, which was more than 2 days after the day the merchandise was released under the special permit, such entry did not meet the requirements of the regulation. Valid

customs regulations made in pursuance of law have the force and effect of law and must be observed. *Maple Leaf Petroleum, Ltd.* v. *United States,* 25 C.C.P.A. (Customs) 5, T.D. 48976. Hence, the assessment of liquidated damages by the collector for noncompliance with the regulation in question was proper. The protest is overruled.

Judgment will be entered accordingly.